United Staff Nurses Union Good morning. My name is Kirk Bond. I'm the lawyer for the United Staff Nurses Union. The United Staff Nurses Union and St. Joseph's Hospital of Whewelah are parties to a collective bargaining agreement that contains an arbitration clause and a provision that says that the hospital discovered that Deb Jones, a registered nurse who was part of the bargaining unit, had been convicted a year previous of fourth-degree assault under the state of Washington criminal laws, and it terminated her as a result of that. The reason it gave to the union was that a nursing home regulation provides that an employee may not be employed by a nursing home if that person has regularly scheduled unsupervised access to nursing home patients. The union filed a grievance on behalf of Ms. Jones, and the case proceeded to arbitration. Now, at the arbitration hearing, the employer bore the burden of proving two things, one, that the nursing home regulation that it relied upon applied to St. Joseph's Hospital, and, two, if it did, that the regulation mandated the discharge of Ms. Jones. Well, at the arbitration hearing, the employer introduced into evidence its license, and the license provided that it is licensed by the Department of Health, and the regulation that it relied upon to fire Ms. Jones was the Department of Social Services regulation. So it became clear that the regulation that it relied upon did not apply to that particular facility. That's the argument that I made to the arbitrator, and that's the argument that the arbitrator bought. You know, and that's what's odd to me, because as I read that regulation, 388-97203, about nursing home employment and all that, it does, it talks about people who have unsupervised access to residents and would prohibit, it seems to me, this person being employed by anyone who was operating a nursing home, whether they were licensed to operate the nursing home or not. But I'm wondering about that. Maybe that's not right. Your Honor, that would not be correct, because if you looked at the definitional sections under the administrative code, under WAC 388-97-005, it clearly states that a nursing home means any facility licensed to operate under Chapter 1851. St. Joseph's Hospital of Cholula is not licensed under Chapter 1851, but it said it was licensed under a completely different code section related to the Department of Health. So these regulations are wholly inapplicable. Independent of the contract that you're going to get to in a minute, that the opposition wants to use. Exactly. Independent of the contract. Independent of the contract, I think the hospital now acknowledges that that regulation does not apply to St. Joseph's Hospital of Cholula, because it's not licensed. Even though it might be operating a nursing home. I would say that it is not operating a nursing home, because under the applicable law, it isn't entitled to operate a nursing home. People sometimes don't follow the law. They do things they shouldn't do. Sometimes you get a licensee or nobody licensed, they're running a nursing home, and they can't do that. I don't think there's any dispute that it's operating, it has an operation that I think all of us would consider analogous to a nursing home.  Not within the nursing home regulations, but it is doing the same type of work that it overlaps with what a nursing home does. But the regulations applicable to a nursing home do not apply to a facility that's licensed as an acute care hospital. So the arbitrator, that's what the arbitrator ruled. Arbitrator said, okay, this regulation that you relied upon to fire Deb Jones doesn't apply to this facility. My job back, you get a make whole remedy. You get your lost wages and you get your lost benefits. Well, the hospital then petitioned the district court to vacate the arbitration award, and when it did so, it attached the contract that you earlier referred to. In my answer that I filed, I protested the fact that they submitted a contract that wasn't submitted to the arbitrator in the first place. Ultimately, the employer filed a motion for summary judgment, and when it did so, it submitted a whole bunch of new evidence that never submitted to the arbitrator. It submitted affidavits from Department of Social Services employees, and attached to those affidavits was this contract that it now relies on as a basis for the discharge. So what the hospital is saying is, okay, the law doesn't require us to terminate Deb Jones, but we voluntarily entered into this contract with the Department of Social Services, and in doing so, that gives us a basis for the discharge. And not only that, because the standard of review is so stringent, what the hospital is saying is that that contract, that private voluntary contract with the public agency, provides an overriding public interest that mandates the vacating the arbitration award. Well, I guess the public interest is that you don't have someone with unlimited access to these vulnerable people in a nursing home-type facility if they're not regulated by the nursing home regulations, I guess it is. Well, Your Honor, my response to that would be that it's not up to a private party entering into a contract to determine what public policy is. That's up to lawmakers. That's up to the legislature. It's up to the courts. It's up to regulatory agencies. And the regulatory agencies applicable to this particular facility didn't determine that somebody who's been convicted of fourth-degree assault can't work in that facility. So what the hospital is saying is, okay, we decided. We decided that we're going to abide by these regulations, and that provides a public policy. Well, it doesn't provide a public policy, because a private contract applicable to a single facility does not constitute a public policy. It's a policy that they choose to abide by, but not one that has been outlined by the courts, by the legislature, by the regulatory authorities. That's a pretty good argument. So the argument that I made to the lower court and that I make here is that there's a couple problems with what the hospital did. One, there's an overriding national labor policy that says, even with all its flaws, labor arbitration is an expeditious way of resolving labor disputes. We're going to go into an arbitration. We're going to present our arguments. We're going to present our evidence to the arbitrator, and the arbitrator is going to issue a decision, and we're going to live by it. And there's very, very, very narrow exceptions or ways to vacate that arbitration award, and none of those apply here. What the arbitrator determined here was, based on the evidence placed before her, that those regulations don't apply. The hospital can't come in and get a second bite at the apple by going into federal court and say, okay, our original basis for the discharge wasn't upheld by the arbitrator, so now we want to present a completely different reason. We're going to present a different reason to the court and present affidavits that the arbitrator never considered. If the courts are going to allow that kind of second bite at the apple, the courts are going to be inundated with these types of cases. I probably do 25 labor arbitrations every year. I have never gone in and tried to vacate an arbitration award because it's so very, very, very difficult. And that's because I know I don't get to present new evidence before the court. I get my shot. That's what the parties contracted to. That's what the bargain was. So what would happen here if we were to leave the arbitration award in place and all that? Would this person then be reemployed by the hospital and go to work in the hospital and start servicing people in the nursing facility and thereby then render the hospital liable for criminal prosecution, breach of its contract or whatever? Well, I can tell you that no governmental agency would have any authority to do anything bad to the hospital as a result of its licensure. Licensure. That's because it doesn't have a license by the State. But the government agency, the health and social services, I guess where the contract was made, didn't that contract require compliance with the statutes? Well, I guess it depends on how you read that contract. Again, that contract. The government can't enforce that contract. Pardon me? The government can't enforce the contract criminally. No, the government can't. That contract is simply a contract, a voluntary contract between this particular hospital and the Department of Social Services. My understanding of it is, and this is only from reading it because I wasn't able to flesh it out at arbitration, but when I read the contract, it looks to me like it's just a mechanism for them to get paid by Medicare and Medicaid patients, nothing more. So the hospital wants to treat a particular kind of patient and get paid for it by the government. So let's say that they would have provided that contract to the arbitrator. Would that have provided just cause for terminating her? Maybe. I mean, the arbitrator may have said, yeah, that provides a basis for them to terminate you. That gives them just cause. But they didn't do that. In the answer to the question of what from here, the disqualification applies to a conviction of assault in the fourth degree within the past three years. And it's been more than three years since her conviction. So all that's at issue here would be back pay and reinstatement. Wouldn't that be true? True. True. I mean, at this point, she's well past the three years. So she couldn't be reinstated anyway. So all that's no, no, no. Actually, she must be reinstated. What the regulation says is that if a hospital may not employ a person who has been convicted of fourth degree assault, if that conviction was in the last three years. Right. So if she were to apply today, independent of this case, she would qualify under that statute for employment because it's been more than three years. Sure. Sure. Yeah. Nothing could happen at this point. If they put her back to work, worst case scenario for the hospital, nothing could happen. It's all hypothetical at this point. At this point, the case is really about money. Right. So it's really, right now, it wouldn't be illegal for them to be, for the hospital to hire her. So the district court's reasoning that it would be allowing something illegal to happen is kind of lewd. It's kind of lewd. I think it was lewd at the time that the district court issued its decision. I know when we had oral argument, the three years ran like 11 days from the date that we gave oral argument. So right during that time is when the three years would have run. But the most that could happen is the Department of Social Services could say, okay, we think that you're in breach of the contract because you have this person in your employ. And so their remedy wouldn't be sanctions, it wouldn't be anything that the government in its licensing capacity could take against the hospital. What it could do is get its contract damages. I don't know what those contract damages would be, but I think what it would do, what it could do is terminate the contract for a cause. Did the department take any action based on the hospital's hiring the nurse? I mean, did the, I recognize the hospital did something, but did the department, the contractual, the contracting department, did it say, hey, you're in breach of your contract and take any action against the hospital? Well, it didn't take any action, but in all fairness, you have to remember that the hospital, as soon as it found out that she had been convicted of this offense, it terminated her. And so the arbitrator held that she's reinstated to her job, but the hospital didn't reinstate her. Instead, they filed a lawsuit to vacate the arbitration award. So no governmental agency would have been in a position to take any adverse action against the hospital because Deb Jones didn't work there once they learned that she had been convicted. The other part of the analysis here is, well, there's several layers, but I'm going to focus on one in which the arbitrator didn't get to the question of whether or not Deb Jones had regularly scheduled or unsupervised access to patients. That's what the regulation says, is the hospital can't employ a person who has regularly scheduled unsupervised access to the patients. She said, because the regulation doesn't apply, I'm not even going to get to that part of the analysis. Well, what the hospital did is submitted evidence in the form of declarations to the district court. The union never got to cross-examine them. So essentially what the district court did was say, okay, I'm making a factual finding here that Deb Jones did have regularly scheduled unsupervised access to patients when the court didn't really receive any evidence regarding that question. That's what half the arbitration was about in the first place. We had argued she didn't have regularly scheduled access to these patients. She worked in the acute portion of the hospital dealing with these other hospital patients. So these facts were presented before the arbitrator, but the arbitrator didn't reach them in making the decision she made? Correct. Is that the way it went? Correct. It was highly disputed at arbitration. That's what most of the evidence revolved around. The hospital put on evidence indicating that she did have scheduled unsupervised access to these patients. The union put on evidence that no, she never did. And the arbitrator didn't even get to that question. Well, the district court didn't do an analysis about it, but necessarily by vacating the arbitration award, that's what he held, is that factually she had regularly scheduled unsupervised access to these patients, and he had no record before him to make that determination. So if the court has no further questions at this time, I'd like to reserve the rest of my time for rebuttal. All right. Thank you. Okay. Please, the Court. My name is Erin Jacobson, and I'm here representing St. Joseph's Hospital of Tooele. As became apparent in the earlier argument and in the briefing, the issue here is, does the arbitrator's award require St. Joseph's to break the law? In this case, it does, for several reasons. Before we get to those reasons, though, it appears a threshold matter. Isn't there a preliminary issue, though, before you get to that ultimate question, which is, under what circumstances can a district court overturn an arbitrator's award? Absolutely. And in this case, I think it's agreed in the briefing that the circumstances under which a district court can overturn an award is based on public policy. In one example, and I think the best case example of this is the American Postal Workers case, which was cited in the briefing, is that when an award requires one party to violate the law, in this case, both the Washington administrative code at issue, as well as the revised code of Washington relating to both hospitals and nursing homes in Chapter 43.43, both of those are positive sources of law, which in this case, St. Joseph's would be required to violate were it required to follow the arbitrator's award and reinstate Ms. Jones. But that the arbitrator's award requires violation of law based on facts not before the arbitrator. In other words, the arbitrator didn't, was presented with a situation where it said, look, if you agree with this party, you're going to violate these six federal statutes right here. And the arbitrator says, go ahead. I'm going to order him to violate those statutes. Here, the contract wasn't put in the record, was it? No, it wasn't. Not until after the arbitration hearing. So the arbitrator didn't really order an illegal act knowing it was illegal. The arbitrator took the case as she found it, entered an award, and then, tardily, the hospital comes in and says, hold it, hold it. Here's a law that you're going to make us violate. I think, first of all, an initial response to that is that's correct. We're not indicating that the arbitrator knew that St. Joseph's would violate the law. Don't you think that if that had been presented to the arbitrator, a different result may have been likely? Absolutely. I believe wholeheartedly, if all of the arguments came out at arbitration, that the arbitrator would have agreed that St. Joseph's would violate the law. I thought you had also prevailed on the factual question of whether she was having unsupervised and regular contact with patients in the long-term care facility. But isn't that exact? See, I see this as countervailing policies. Isn't that what you just said, that the outcome would have been different? Part of the reason for the policy that arbitration awards are binding and final, particularly in labor disputes? Right. I think that in order to fully understand this case, though, we need to review what happened at the arbitration proceeding and understand why that evidence wasn't presented. It wasn't, as in the cases that were cited by the union, including, for example, the Seventh Circuit case of Mogi. When you actually look at that case, and that's the case that the union relies on in arguing that the evidence that wasn't presented to the arbitrator should not be considered here and shouldn't have been considered at the district court, when you actually look at that case, what the case shows is if there was no cause to not present the evidence, if there was no explanation why the evidence wasn't presented before the arbitrator, then it's correct. The district court shouldn't consider that evidence. That's not true here. In this case, as Mr. Bond suggested in his opening argument there, the issue before the arbitrator was not whether St. Joseph's was a nursing home. We went into the arbitration, in fact, sitting at St. Joseph's, walking through the nursing home to get to the room where we had the arbitration. It was the understanding of all the parties, including the arbitrator and all the counsel, that we were dealing with a nursing home here. That was an admitted fact going into the arbitration. It was a stipulated fact? It wasn't stipulated in writing. It was, Mr. Bond indicated in his opening statement at arbitration, St. Joseph's is a nursing home and a hospital. In all of the briefing before the arbitrator, again, it was consistent that St. Joseph's is a nursing home and a hospital. Maybe an analogy would be the best way to explain this, I think, why that issue didn't come up and why St. Joseph's didn't present the evidence at arbitration. This is basically similar to, say, you have a gender discrimination claim. A woman comes forward and claims that she's been discriminated against and terminated because she's a woman. Everyone goes into that basically admitting and assuming and agreeing she's a woman. That's the first issue. But you don't present evidence at the hearing of the fact that she's a woman. That doesn't make sense. It's quite analogous, though, because nursing home is specifically regulated and defined under the state law. So it's more complicated than just looking at the facility to understand what it is. I think you're absolutely right. It's very complicated. And that leads into another point that I'd like to make. But first of all, I think that that complication wasn't recognized by any of the parties, including the union's attorney, until after the arbitration hearing. We simply went into it, all sides, again, went into it assuming that it was a nursing home and that was a given fact that we were basing the arguments off of. The issue didn't come up until after the arbitration, at which time during the post-hearing brief, the union argued that, wait, based on the face of the license from the Department of Health, this isn't a nursing home. Again, that leads into the question. But it seems to me that there wasn't much misleading going on. If the hospital's stated reason for the discharge was the regulation, then it seems to me that it's got to occur to the hospital. It has to show why the regulation applies. And I, again, would argue that that wasn't something that was needed to be proven at the arbitration hearing because it was admitted. The parties went in not challenging that fact. For example, at the arbitration, St. Joseph's had terminated Ms. Jones, obviously. Therefore, it was the union that filed the grievance, the union who presented the case indicating that Just Cause didn't exist. The union simply didn't raise that argument. Had the union raised the argument, evidence could have been presented at the time. But whose burden was it? That's, I think, Judge Nelson's point. Whose burden was it to prove that you were a nursing home and not, because as I understand it, the certificate of the Washington State Department of Health that provided the license for acute care hospital was before the arbitrator. Correct. Okay. So, in essence, what you did is produce evidence that you were an acute care hospital. The testimony, actually, at the arbitration hearing, and again, unfortunately, we don't have a written record of the testimony as the arbitrator didn't take that, but the testimony of the evidence as that certificate was provided, as that license was provided, was on the face of the license, there's an indication for the number of beds that St. Joseph's is licensed to operate. The testimony there was that a certain number of those beds were for the acute care unit. A certain number of those beds were specifically for the long-term care unit or nursing home. Again, that gets into the verbal testimony of why that license was provided. But the point, again, that gets into the complication of what the Department of Social and Health Services has done here and what St. Joseph's now must live with because of the way they've chosen to regulate their nursing homes. But don't you think that just the fact we're sitting here arguing without a transcript and you're telling us what was said and what the testimony was and why things were produced, that, I mean, doesn't that go against the policy of having the arbitration award be final because it's almost impossible for us to sit here and re-litigate the issue? And I think in this case, again, I was indicating why that license was provided to respond to your question, but quite frankly, I don't believe the license is what is relevant here. What's relevant here is the information from the Department of Social and Health Services, which, again, was provided to the arbitrator just as soon as the issue became apparent. She declined jurisdiction to consider that. But that was after she had already rendered her decision. Right, which is... That's why the issue became apparent to you? Quite frankly, yes, that's why the issue became apparent. There was an opportunity beforehand and wouldn't have been caused beforehand to present the evidence to the arbitrator. Again, it simply wasn't an issue. The way the arbitrator structured the briefing schedule, she required both parties to submit post-hearing briefs on the same day, no opportunity for rebuttal after that fact. She simply took the post-hearing briefs and made her decision. And it wasn't until the post-hearing briefs that it became apparent that the union was going to switch course and challenge the fact that St. Joseph's was required to comply with the nursing home regulation. Let me get that straight in my mind now. So the case is not closed before the arbitrator after all the evidence is in. The arbitrator says, well, I'm going to make my decision, but first I want you both to file simultaneous briefs. Is that the way it happened? That's correct. Okay. Then the simultaneous briefs come in. Of course, you don't know what the other brief is going to be. And the simultaneous briefs come in. And the union's brief says, well, look, this employer was licensed only as an acute care hospital, and therefore the nursing home regulations don't even apply to it. Right. And that's the first time this came up anywhere. That's what you're saying. Correct. Your brief had already been filed to the issues that had been argued and were before the arbitration, and this had not been. Correct. Then the arbitrator makes the decision. Right. And then you go into the district court. Then did you ask the arbitrator to reopen? Yes. We asked the arbitrator to reopen this because, again, there was an opportunity. And according to the arbitrator, that wasn't even a proper opportunity as she declined jurisdiction. But at that point, St. Joseph's, when faced with either violating a regulation and putting its contract with DSHS in jeopardy or presenting reconsideration, decided to present a petition for reconsideration. The arbitrator declined to consider that additional evidence, and therefore the only recourse was to go to the district court, at which time. Could you make any effort after you received opposing counsel's supplemental brief to or final brief to ask for an opportunity for supplemental briefing or to file a supplemental brief? No. At that point, the arbitrator had been clear at the hearing that briefing was to be filed to summarize the issues that were presented at the arbitration hearing. It was to be filed simultaneously with no opportunity to respond or rebut each other's argument. So we didn't feel at that time it would have been appropriate because it was directly contrary to what the arbitrator had required us to do. Well, we have appellate rules and that preclude certain briefing that if a party feels that it needs to respond to a particular argument that it hadn't had the opportunity before, they usually file a motion. If it's true, it's likely to be granted. And I wish we had that opportunity here, obviously, but I don't believe that that opportunity was before us with the arbitrator. She didn't indicate that there was any opportunity for rebuttal. It was simply the purpose was to file simultaneous briefing. And again, I think the reasoning for that was because she believed, as we all did, that the briefing would be on the issues that were presented at the hearing, not on extraneous issues that weren't brought into evidence at the arbitration hearing. So there simply, at that time, wasn't an opportunity to present any rebuttal evidence. We tried afterwards and she declined jurisdiction. So that left us with the remedy of the district court. And again, to get back to the, basically, what we're dealing with and what St. Joseph's is dealing with here is the Department of Social and Health Services' view of things. Throughout the union's arguments, both in briefing and here today, Mr. Bond refers to, as I read the contract, to quote him, for example, and as I interpret the contract and indicates that he didn't have opportunity because it wasn't before the arbitrator to discover any additional evidence on that contract. I'd like to let you know that we're not dealing with Mr. Bond's interpretation of the contract. We're not dealing with the union's interpretation of the contract because we haven't evidenced how the Department of Social and Health Services interprets the contract. This is the regulatory body that's charged with enforcing the very document that we're looking at. And we have declarations from two individuals at DSHS. So the basis, basic argument, I guess, comes down to, if we look at what the district court said the law was, and I haven't seen that the parties have really disputed that, basis for vacation arbitration award, the second one. The second one is that the enforcement of the arbitration award violates public policy, not that the award is in violation of public policy, but that enforcement of the award. And to get enforcement, you have to go to the district court. Correct. Or some court, district court in this case. And then the district court can look at whether enforcement, forcing the hospital to put this woman back in contact with nursing home patients, would violate public policy. That's a separate question on whether the award itself violates public policy. Yeah, I think you're correct. And perhaps I misspoke in indicating that the award violated public policy. You're absolutely right. And that goes back to an earlier question of whether or not, you know, the arbitrator looked at the evidence and decided, I'm going to make St. Joseph's violate the law. Obviously, that's not the case. She believed that she was making her decision in accordance with the law, but as it turns out, that wasn't true. And we discovered that after, by presenting the evidence from the Department of Social and Health Services, which indicated, no, you made the award based on what you believed to be true, but the way Department of Social and Health Services interprets the award is, requiring St. Joseph's to reinstate Deb Jones, requiring her to be employed at St. Joseph's, means that St. Joseph's is violating the Washington regulations, regulated nursing homes. Not necessarily. Not necessarily. Not if she's not having regular and unsupervised contact with patients in that facility. So actually, the enforcement of the arbitration award would not have necessarily required the hospital to violate public policy. You could have put her in some other, you could have put her back in the acute care unit. You're correct. That raises another issue, but I think that the conclusion is incorrect, and I think that the conclusion, the correct conclusion is that the only way to have Ms. Jones employed at St. Joseph's would have required her to have unsupervised access to nursing home residents. And that is apparent in the record. It was apparent in the record before the district court, and it's in the record before this Court. The primary piece of evidence that I would point you to is the collective bargaining agreement between the union and St. Joseph's. Section 5.7 of that agreement, which, again, was in evidence before the district court and is here in the record, indicates that nurses at St. Joseph's, regardless of which unit they're assigned to, whether it's acute care or long-term care, are required to float to other units. They're required to float to other units, number one, on a shift-by-shift basis. For example, a nurse calls in sick and they need someone to cover. If a nurse in acute care can move over to long-term care, that happens. The nurses are simply expected. They don't have to let it happen in a given case, right? Well, they do in this case, in every case, because it's required of them in the collective bargaining agreement. It's separate. Well, apparently there was a lot of evidence on this point before the arbitrator about whether this particular person really did have unlimited access to the people in the nursing facility. Suppose we were to agree with you that this contract would be contrary to or that the arbitration award was contrary to public policy because it would require your client to violate the law. I guess that's probably what it would be. But it wouldn't be your client wouldn't be required to violate the law by hiring this person back again if her duties, if she had not been involved in taking care of these people in the nursing home. So that issue would remain an issue of fact that was still unresolved, wouldn't it? I think that issue of fact could be resolved and, in fact, isn't really an issue of fact anymore at all when you look at it. Well, the district court did, and we should just simply say, well, the district court resolved it. Well, I don't think, again, the standard of review here is de novo, so it's not a matter of just saying the district court did it, so we have to, too. But you can look to that contract again, which requires nursing. No, but we usually don't decide factual matters. You're saying, well, it's a legal matter required by the contract. What I'm saying in this instance is the factual matter can be decided just by looking at the contract. It may be a factual matter, but it's not a disputed factual matter in the evidence. There's no evidence to the contrary in the record. There's no evidence that would contradict the fact that, as required in the collective bargaining agreement, she would have been required to have access to nursing home residents just as part of her requirement to float to the long-term care unit. So the collective bargaining agreement speaks directly to interdepartmental floating? It does. And that's, again, I'll point you to Section 5.7. And what it says in Section 5.7 is that nurses who may be assigned to one or the other unit, and the way St. Joseph's terms this is there's the acute care unit, which is the hospital, and there's the long-term care unit, which is the nursing home. And that Section 5.7 speaks to the fact that nurses, regardless of which unit they're unit or to any department, for that matter, in the hospital. So in this case, the only two units in the hospital are the long-term care unit and the acute care unit. So regardless of which one she's assigned to, under that section of the collective bargaining agreement, which she was a party to, she would be required to float to the other unit, and thereby ---- If the hospital tried to freeze her to the acute care unit, it would be in violation of the collective bargaining agreement? Correct. It's the hospital's ability under the collective bargaining agreement to require that, and it's something that's required, frankly, because we're talking about a ---- Does the hospital require it, or does the union require it? Well, both. The hospital and the union are the parties to the collective bargaining ---- Who asked for that, the floating? I mean, who? I mean, is it ---- I mean, I don't know. That's another problem with this whole case is that we don't have a record developed on that point. So I can't ---- You might have a clause in the CBA, but I don't know how it's interpreted. And CBA clauses are always subject to negotiation. I mean, in implementation between the union and the management as to particular employees, I mean, that happens all the time. If I can ---- My time's up, but if I can respond quickly. You can respond. Okay. Thank you. I believe that, again, just a review of Section 5.7 will answer that question. It's explicit in the section itself that nurses are required to work anywhere in the hospital. That's something that the nurses, including Deb Jones, agreed to going in. And so I don't see that as being a fact issue here. The facts and the record are the collective bargaining ---- We'll look at it. Thank you. Your Honors, if I may address that last point first. Article 5.7 says floating. There's nothing in that particular article that mandates that anybody float. It says the employer retains the right to float nurses between departments. Now, we don't have a record here. But what I remember the evidence as being is that most nurses aren't qualified to float between the long-term care units. And the acute care portions of the hospital. So as a practical matter, they don't do it. It just so happened that Deb Jones was qualified to do it, and sometimes she was asked to do that, and she did it. But nothing in the contract mandates that she goes back and forth. And, in fact, most nurses didn't go back and forth. Now, I'd like to address briefly how the arbitration went down and what we all assumed and what we all didn't assume and what we all argued and what we didn't argue. The fact remains I didn't argue anything. I went into that arbitration hearing knowing nothing about their licensure except what counsel had represented to me prior to the arbitration. And in our earlier discussions, they represented to me that they were singularly licensed as an acute care hospital in a nursing home. I wasn't, frankly, that familiar with the regulatory scheme when we stepped into that arbitration hearing. And the way these things go down is they tend to be kind of fly-by-the-seat-of-your-pants type hearings. You don't have discovery ahead of time. You have to just kind of develop the case as you sit there. And that's what we did. So they introduced the actual license. That was the first time that I realized, oh, my God, they're not licensed as a nursing home. I'm going to win this thing. So that's really how that thing went down. I didn't make an argument. We don't do a closing argument before the arbitrator. We went back. We submitted our briefs. And, frankly, I was a little giddish about the whole thing because I had come up with this argument. I believed that the hospital really didn't know that they weren't licensed as a nursing home. So I imagine when they got my brief, they said, oh, we've got a problem here. So I fully expected that they were going to go back to the arbitrator and say, look, we've got to develop this a little bit further. But they didn't do that. So they tried to ask for a motion for reconsideration, but it's just well known in arbitral law that she loses jurisdiction the moment she issues that award, unless there needs to be some sort of clarification or it's an incomplete award of somehow. But they asked her to completely reopen it. And I didn't even file a brief in opposition. I sent her an e-mail and said, under this doctrine, you don't have jurisdiction anymore. And she agreed. And she didn't have jurisdiction anymore. So she just had no power to reopen the case, and she recognized that. So that didn't give them the power to go to the district court for the first time and say, okay, now we're going to have you relitigate the issue. National labor policy just simply doesn't allow them to do that. So it may very well have been a much different case had that contract been introduced and had those Department of Social Services employees been called to testify at that hearing, but they weren't. So as a result, you don't just get to do a factual analysis once you get to the federal court. You're left with a very heavy burden of showing that the record before the arbitrator and her award resulting from that record would violate this overriding public policy. And the hospital just frankly didn't do it. And the district court erred in vacating the arbitration award. The union would ask that you reverse the district court. All right. Thank you, counsel. State Justice Hospital v. United Staff Nurses Union will be submitted. And we have previously submitted Grandland v. Clark. So this session of court will be adjourned.
judges: Thompson, T. Nelson, Wardlaw